UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ELECTRONIC ENVIRONMENTS CORPORATION,    )
                                         )
                    Plaintiff,  05 ⌐ 11093 NG
                                         )    CIVIL ACTION NO.:
v.                                       )
                                         )                  RECEIPT #
JAMES M. EMMING,                         )                  AMOUNT $ 250 + mothac
                          MAGISTRATE JUDGE Alexandr         SUMMONS ISSUED  N/A
                    Defendant.           )                  LOCAL RULE 4.1
                                         )                  WAIVER FORM
                                                            MCF ISSUED
                    **NOTICE OF REMOVAL**                    BY DPTY. CLK.
                                                            DATE  5/25/05

Defendant, James M. Emming, by his attorneys, Davis, Malm & D'Agostine, P.C., by

Gary M. Feldman, petitions for removal of the above-entitled case to the United States District

Court for the District of Massachusetts and states as follows:

1.     A civil action designated as Case No. 05-1440A has been commenced and is now

pending before the Superior Court, Middlesex County, Commonwealth of Massachusetts, with

Electronic Environments Corporation, Plaintiff, and naming Defendant James M. Emming.

2.     The following law firms have been retained to represent the Defendant in all

proceedings relating to civil action Case No. 05-1440A: Davis, Malm & D'Agostine, P.C., by

Gary M. Feldman, and Axley Brynelson, LLP, by Lori M. Lubinsky.

3.     On or about April 29, 2005, Plaintiff filed a Summons and Verified Complaint in

Superior Court, Middlesex County, Commonwealth of Massachusetts, commencing Case

No.05-1440A.  A true and correct copy of the Summons and Verified Complaint is attached

hereto as Exhibit 1.

4.     Case No. 05-1440A is a civil action in which the United States District Court has

original subject jurisdiction in that complete diversity of the parties exists.  The Plaintiff asks for

injunctive relief and damages in the Verified Complaint. Based on the financial costs to the

Defendant in complying with a permanent injunction, the amount in controversy exceeds

$75,000.00.

5.      The Defendant was served with a copy of the Summons and Verified Complaint

for the first time on May 6, 2005.

6.      Removal of this action is timely in that less than 30 days have passed since the

Defendant received a copy of the initial pleading. 28 U.S.C. § 1446(b).

7.      By copy of this Notice, the Defendant has given notice to the Plaintiff and will

promptly file a copy of the Notice with the Clerk of Court, Middlesex County, as required by

28 U.S.C. § 1446(d).

WHEREFORE, the Defendant requests that Case No. 05-1440A be removed from the

Superior Court, Middlesex County, Commonwealth of Massachusetts, into the United States

District Court for the District of Massachusetts for trial and determination.

> JAMES M. EMMING
> By his attorneys,
>
> Gary M. Feldman
> BBO #162070
> **DAVIS, MALM & D'AGOSTINE, P.C.**
> One Boston Place
> Boston, MA 02108
> (617) 367-2500

Dated: May 25, 2005

I HEREBY CERTIFY THAT A COPY OF THE ABOVE
DOCUMENT WAS SERVED UPON THE ATTORNEY
OF RECORD FOR EACH PARTY BY
MAIL/HAND ON ____5-25-05____

2

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER.

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

No.

**05-1440 A**

MIDDLESEX ............... , ss
[seal]

Electronic Environments
Corporation...................... , Plaintiff(s)

v.

James M. Emming......... , Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon ...Leo S. McNamara, Esquire............

................................................. plaintiff's attorney, whose address is .84. State Street,.....

9th Floor, Boston, MA 02109..................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at 40 Thorndike Street

Cambridge, MA 02141...................., either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Barbara J. Rouse

Witness, Suzanne V. DelVecchio, Esquire, at ...Middlesex Superior Court..........................

the ............29th................................... day of ......April.....................................................

........................., in the year of our Lord ...2005...............................

Edward J. Sullivan

Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

FORM NO. SUP. — 001

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO.

|  |  |
|---|---|
| ELECTRONIC ENVIRONMENTS CORPORATION,)<br>Plaintiff ) | |
| ) | |
| v. ) | **VERIFIED COMPLAINT** |
| ) | |
| JAMES M. EMMING, ) | |
| Defendant ) | |

### Introduction

This is a complaint for injunctive relief and breach of a non-competition and confidentiality agreement between the plaintiff Electronic Environments Corporation ("EEC") and one of its former employees, defendant James M. Emming ("Emming") arising out of Emming's employment by EEC in Massachusetts.

### Parties

1. EEC is a Massachusetts corporation with its principal place of business located at 410 Forest Street, Marlborough, Massachusetts 01752. EEC is engaged, *inter alia,* in the business of providing maintenance services and other technical services for DC telecommunications power systems and AC uninterruptible power systems ("UPS") throughout the United States.

### Statement of Facts

2. Defendant Emming is, upon information and belief, a resident of 91 Leffingwell Road, Apt. D1, Uncasville, Connecticut 06382.

3.      From June 1999 until April 2005, when he informed EEC that he was leaving EEC's employment, Emmings was employed as a service technician for telecommunications and UPS sites serviced by EEC including sites owned by Cingular and Level 3 Communications in Massachusetts.

4.      On June 7, 1999, in consideration of his continued employments as an at will employee by EEC, Emmings executed a Non-Competition And Confidentiality Agreement ("non-compete agreement") with EEC.  A true copy of the non-compete agreement is attached hereto as Exhibit "A".

5.      Paragraph 1. of the non-compete agreement reads as follows:

> "Non-Competition/Non-Solicitation:  During the period of my employment by the Company, I shall devote my full time and best efforts to the business of the Company.  Further, during the period of my employment by the Company and for one year thereafter regardless of the circumstances surrounding my termination, I shall not, directly or indirectly, alone or as a consultant, partner, officer, director, employee or stockholder of any entity, (a) engage in any business activity which is in competition with the products or services being developed, manufactured, marketed, or sold by the Company, (b) solicit, do business or attempt to do business with any other customer or prospective customer of the Company with whom I have solicited or had contact with while employed by the Company, or (c) employ, or knowingly permit any entity which is directly or indirectly controlled by me to employ, any person who is employed by the Company, or is an agent or consultant of the Company, at any time during my employment or during the period of one year thereafter, or in any manner seek to solicit, recruit or induce any such person to leave employment with the Company, or assist in the recruitment or hiring of any such person.

> Paragraph 2 (a) of the non-compete agreement reads:

> "Confidentiality:
> (a) I shall not at any time, whether during or after the termination of my employment, reveal to any person or entity any of the trade secrets or

2

confidential information concerning the organization, business, operations, intellectual property or finances of the Company, or of any third party which the Company is under obligation to keep confidential, including, but not limited to, trade secrets or confidential information respecting inventions, products, evaluations, designs, methods, knowhow, techniques, systems, processes, software programs, software code, works of authorship, customer lists, sales projections, sales pipeline reports, customer profiles and/or purchasing history, marketing plans or other business plans, personnel information, projects, and proposals (collectively "Confidential Information"), except to employees of the Company who need to know such Confidential Information for the purposes of their employment, or as otherwise authorized by the Company in writing. I shall keep secret all matters entrusted to me and shall not use or attempt to use Confidential Information in any manner which may injure or cause loss to the Company, whether directly or indirectly."

7.  Paragraph 3. and 9. of the non-compete agreement read, respectively, as follows:

"3.  **Remedies:** I agree that any breach of this Agreement by me will cause irreparable damage to the Company and the Company shall have, in addition to any and all remedies of law, the right to an injunction, specific performance or to other equitable relief. In the event that the Company prevails in any litigation to enforce any of its rights under this Agreement, I agree to pay all costs and expenses of the Company, including reasonable attorney's fees, incurred in enforcing this Agreement."

"9.  **Choice of law:** This Agreement shall be governed by the laws of the Commonwealth of Massachusetts without giving effect to the principles of conflicts of laws herein. Any claims by one party against the other shall be maintained in any court located in Massachusetts, and I hereby submit to the jurisdiction and venue of any such court."

8.  Prior to Emming terminating his employment with EEC, EEC was engaged in negotiations with a direct competitor of EEC, J.T. Packard Associates, Inc. ("Packard"), a Wisconsin corporation, for a possible business partnership with EEC. In conjunction with those negotiations Packard and EEC entered into a Mutual Confidentiality Agreement on May 15, 2004 for a period of one year, so that EEC and Packard could safely exchange

3

confidential information in furtherance of the negotiations.

9.      On March 15, 2005 at a meeting with its client Level 3 Communications, employees of Level 3 Communications raised questions about a possible EEC/Packard business partnership. Up to that point EEC had taken precautions to keep that information confidential and limited to officers of EEC.

10.     On March 21, 2005 Packard attempted to recruit EEC's Mid-Atlantic Regional Manager, Eugene McNeil, by offering him employment as Packard's "Business Development Manager."

11.     As late as March 23, 2005, Emming performed service for EEC as an employee of EEC at Cingular's telecommunications site in Bolton, Massachusetts.

12.     On March 28, 2005 Emming informed EEC that he was leaving EEC's employment.

13.     On March 30, 2005 EEC was informed by an employee of its customer, Cingular, that Emming was working for Packard and that Packard was actively seeking to become an authorized Cingular technical service and maintenance vendor, in direct competition with EEC.

14.     EEC was later informed and believes that Emming was hired by Packard at a salary of $75,000.00 per year, with a $5,000.00 signing bonus and a 3% incentive fee for all EEC service contracts Emming is able to acquire for Packard in competition with EEC.

4

## Count I
### (breach of contract)

15.    EEC realleges and reaffirms paragraphs 1-14 inclusive as if each and every allegation thereof was set forth fully herein.

16.    EEC is informed and believes that Emming breached and continues to breach, paragraph 1 of his non-compete agreement with EEC by:

a) by engaging in a business activity in competition with EEC within one year of his employment with EEC by accepting employment from a direct competitor, Packard; and

b) by soliciting, or aiding Packard in the solicitation of an EEC customer, Cingular, within one year of his employment by EEC.

17.    EEC is also informed and therefore believes that Emming has breached, and continues to breach, paragraph 1 (a) of his non-compete agreement with EEC by providing Packard with confidential information from EEC in furtherance of Packard's efforts to obtain business from EEC's customer, Cingular.

18.    EEC has suffered damages and will continue to suffer damages on account of Emming's breach of his non-compete agreement with EEC.

19.    EEC has performed all conditions precedent to maintaining this action for breach of contract against Emming.

WHEREFORE, plaintiff Electronic Environments Corporation demands that this Court enter judgment against defendant James M. Emming in Electronic Environments

5

Corporation's favor for all amounts that this Court deems due and owing Electronic Environments Corporation on account of the allegations of Count I, together with interest and costs, and that this Court grant such other relief to Electronic Environments Corporation as this Court deems appropriate.

## Count II
### (Injunctive relief)

20.    EEC realleges and reaffirms paragraphs 1-19 of its complaint as if each and every allegation thereof was set forth fully herein.

21.    Emming by his actions in accepting employment in direct competition with EEC, in assisting a direct competitor in the solicitation of business from an EEC customer or customers, and in providing Packard with confidential information of EEC, has, and is, causing irreparable harm to EEC, and will continue to do so.

22.    EEC has complied with all conditions precedent to maintaining this action for injunctive relief against Emming.

WHEREFORE, Plaintiff Electronic Environments Corporation demands that this Court:

a) temporarily enjoin defendant James M. Emming from directly or indirectly, alone or as a consultant, partner, officer, director, employee or stockholder of any entity from engaging or continuing to engage in any business activity which is in competition with the products or services being developed, manufactured, marketed or sold by Electronic Environments Corporation or soliciting, doing business or attempting to do business with any Customer or prospective customer of Electronic Environments Corporation with whom James M. Emming has solicited or has had contact with while employed by Electronic

6

Environments Corporation, for one (1) year from March 28, 2005 or from employing, or knowingly permitting any entity which is directly or indirectly controlled by James M. Emming to employ, any person who is employed by Electronic Environments Corporation, or is an agent or consultant of Electronic Environments Corporation, at any time during James M. Emming's employment or during the period of one year thereafter, or in any manner from seeking to solicit, recruit or induce any such person to leave employment of Electronic Environments Corporation, or assisting in the recruitment or hiring of any such person, within the meaning of paragraph 1. of James M. Emming's June 7, 1999 Non-Competition And Confidentiality Agreement with Electronic Environments Corporation or from divulging any confidential information of Electronic Environments Corporation to any other person or entity within the meaning of paragraph 2 (a) of James M. Emming's June 7, 1999 Non-Competition And Confidentiality Agreement with Electronic Environments Corporation.

b) preliminarily enjoin defendant James M. Emming from directly or indirectly, alone or as a consultant, partner, officer, director, employee or stockholder of any entity from engaging or continuing to engage in any business activity which is in competition with the products or services being developed, manufactured, marketed or sold by Electronic Environments Corporation or soliciting, doing business or attempting to do business with any Customer or prospective customer of Electronic Environments Corporation with whom James M. Emming has solicited or has had contact with while employed by Electronic Environments Corporation, for one (1) year from March 28, 2005 or from employing, or knowingly permitting any entity which is directly or indirectly controlled by James M. Emming to employ, any person who is employed by Electronic Environments Corporation, or is an agent or consultant of Electronic Environments Corporation, at any time during James M. Emming's employment or during the period of one year thereafter, or in any manner from seeking to solicit, recruit or induce any such person to leave employment of

7

Electronic Environments Corporation, or assisting in the recruitment or hiring of any such person, within the meaning of paragraph 1. of James M. Emming's June 7, 1999 Non-Competition And Confidentiality Agreement with Electronic Environments Corporation or from divulging any confidential information of Electronic Environments Corporation to any other person or entity within the meaning of paragraph 2 (a) of James M. Emming's June 7, 1999 Non-Competition And Confidentiality Agreement with Electronic Environments Corporation.

c) permanently enjoin defendant James M. Emming from directly or indirectly, alone or as a consultant, partner, officer, director, employee or stockholder of any entity from engaging or continuing to engage in any business activity which is in competition with the products or services being developed, manufactured, marketed or sold by Electronic Environments Corporation or soliciting, doing business or attempting to do business with any Customer or prospective customer of Electronic Environments Corporation with whom James M. Emming has solicited or has had contact with while employed by Electronic Environments Corporation, for one (1) year from March 28, 2005 or from employing, or knowingly permitting any entity which is directly or indirectly controlled by James M. Emming to employ, any person who is employed by Electronic Environments Corporation, or is an agent or consultant of Electronic Environments Corporation, at any time during James M. Emming's employment or during the period of one year thereafter, or in any manner from seeking to solicit, recruit or induce any such person to leave employment of Electronic Environments Corporation, or assisting in the recruitment or hiring of any such person, within the meaning of paragraph 1. of James M. Emming's June 7, 1999 Non-Competition And Confidentiality Agreement with Electronic Environments Corporation or from divulging any confidential information of Electronic Environments Corporation to any other person or entity within the meaning of paragraph 2 (a) of James M. Emming's June 7,

1999 Non-Competition And Confidentiality Agreement with Electronic Environments
Corporation.

ELECTRONIC ENVIRONMENTS
CORPORATION
By its Attorney,

Leo S. McNamara, Esq.
BBO # 339380
McNAMARA & FLYNN, P.A.
84 State Street, 9th Floor
Boston, MA 02109
(617) 723-3344

Dated: April 26, 2005

9

## Verification

I, Kenneth Rapoport, CEO of Electronic Environments Corporation depose and say that I have personal knowledge of the facts set forth in this verified complaint except to the extent where facts are stated upon information and belief wherein in which case the facts are based upon my own information and belief.

*Kenneth A. Rapoport* CEO

Kenneth A. Rapoport, CEO

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                        APRIL 26, 2005

Signed before me by the above-named Kenneth Rapoport on this 26 day of April 2005 under the pains and penalties of perjury.

Notary Public
My commission expires: 8/14/09

# EXHIBIT "A"

## NON-COMPETITION AND CONFIDENTIALITY AGREEMENT

In consideration and as a condition of my employment or continued employment by Electronic Environments Corporation or any of its subsidiaries, divisions or affiliates (collectively the "Company"), I hereby agree with the Company as follows:

1. **Non-Competition/Non-Solicitation:** During the period of my employment by the Company, I shall devote my full time and best efforts to the business of the Company. Further, during the period of my employment by the Company and for one year thereafter regardless of the circumstances surrounding my termination, I shall not, directly or indirectly, alone or as a consultant, partner, officer, director, employee or stockholder of any entity, (a) engage in any business activity which is in competition with the products or services being developed, manufactured, marketed, or sold by the Company, (b) solicit, do business or attempt to do business with any customer or prospective customer of the Company with whom I have solicited or had contact with while employed by the Company, or (c) employ, or knowingly permit any entity which is directly or indirectly controlled by me to employ, any person who is employed by the Company, or is an agent or consultant of the Company, at any time during my employment or during the period of one year thereafter, or in any manner seek to solicit, recruit or induce any such person to leave employment with the Company, or assist in the recruitment or hiring of any such person.

2. **Confidentiality:**
   (a) I shall not at any time, whether during or after the termination of my employment, reveal to any person or entity any of the trade secrets or confidential information concerning the organization, business, operations, intellectual property or finances of the Company, or of any third party which the Company is under obligation to keep confidential, including, but not limited to, trade secrets or confidential information respecting inventions, products, evaluations, designs, methods, know-how, techniques, systems, processes, software programs, software code, works of authorship, customer lists, sales projections, sales pipeline reports, customer profiles and/or purchasing history, marketing plans or other business plans, personnel information, projects, and proposals (collectively "Confidential Information"), except to employees of the Company who need to know such Confidential Information for the purposes of their employment, or as otherwise authorized by the Company in writing. I shall keep secret all matters entrusted to me and shall not use or attempt to use Confidential Information in any manner which may injure or cause loss to the Company, whether directly or indirectly.

   (b) Furthermore, I agree that during my employment I shall not make, use or permit to be used any notes, memoranda, reports, lists, records, drawings, sketches, specifications, software programs, data, documentation or other materials of any nature, relating to any matter within the scope of the business of the Company or concerning any of its dealings or affairs (collectively "Company Documentation") otherwise than for the benefit of the Company. I further agree that I shall not, after the termination of my employment, use or permit to be used any Company Documentation, it being agreed that all Company Documentation shall be and remain the sole and exclusive property of the Company. Immediately upon the termination of my employment I shall deliver all Company Documentation in my possession, and all copies thereof, to the Company, at its main office.

05/06/2005  03:43    60884899010                                      JT  PACKARD                                  PAGE  18/23

FROM :STAPLES 187                      FAX NO. :18604391676            May. 06 2005 04:32PM  P16
Page 2 ot 2

3.  **Remedies:** I agree that any breach of this Agreement by me will cause irreparable damage to the Company and the Company shall have, in addition to any and all remedies of law, the right to an injunction, specific performance or other equitable relief. In the event that the Company prevails in any litigation to enforce any of its rights under this Agreement, I agree to pay all costs and expenses of the Company, including reasonable attorney's fees, incurred in enforcing this Agreement.

4.  **At-Will Employment:** I acknowledge that my employment is at-will, and that both I and the Company can terminate my employment without reason at any time. This Agreement does not create an obligation on the Company to continue my employment. I also agree that my obligations under this Agreement shall survive the termination of my employment regardless of the manner of such termination and shall be binding upon my heirs, executors, administrators and legal representatives. I agree that any change in my duties or compensation shall not affect the validity of this Agreement.

5.  **Amendments:** Any amendments to or modification of this Agreement, or any waiver of any provision hereof must be in writing and signed by the Company. Any waiver by the Company of a breach of any provision of this Agreement shall not be construed as a waiver of any subsequent breach of such provision or any other provision hereof.

6.  **Enforceability:** I agree that each provision herein shall be treated as a separate and independent clause, and the unenforceability of any one clause shall not impair the enforceability of any of the other clauses of the Agreement. Moreover, if a provision contained in this Agreement shall be held to be excessively broad in scope, so as to be unenforceable at law, such provision shall be construed by the appropriate judicial body by limiting it so as to be enforceable to the maximum extent compatible with the applicable law as it shall then appear. I hereby further agree that the language of all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning and not strictly for or against either of the parties.

7.  This Agreement represents the complete and sole understanding between the parties, and supersedes any other agreement or understanding, whether oral or written, concerning non-competition and confidentiality. This Agreement is deemed to govern from its inception going forward.

8.  **Assignment:** The Company shall have the right to assign this Agreement to its successors and assigns, and all agreements hereunder shall inure to the benefit of said successors or assigns. I agree that I will not assign this Agreement.

9.  **Choice of law:** This Agreement shall be governed by the laws of the Commonwealth of Massachusetts without giving effect to the principles of conflicts of laws therein. Any claims by one party against the other shall be maintained in any court located in Massachusetts, and I hereby submit to the jurisdiction and venue of any such court.

IN WITNESS HEREOF, the undersigned has executed this Agreement as a sealed instrument as of the date first above written.

6/2/99
Date

Signature

James Emming
Name – Please Print

# EXHIBIT "B"

# MUTUAL CONFIDENTIALITY AGREEMENT

This Mutual Confidentiality Agreement is effective as of the 14 day of May, 2004, by and between JT Packard ("Recipient"), located at 275 Investment Court, Verona, WI 53593 and Electronic Environments Corporation (EEC) having a place of business at 60 Shawmut Road, Canton, Massachusetts 02021.

1. **PURPOSE**: RECIPIENT and EEC desire to engage in discussions or exchange non-public financial, technical, business or other information concerning both parties' business, products and services. In connection with these business activities, it may be necessary or desirable for either party to provide the other party with, or allow access to, Confidential Information (defined below) of the disclosing party or of a third party to which the disclosing party is under an obligation of confidentiality. Each party believes that its Confidential Information has significant commercial value, which would be diminished by unauthorized disclosure. Accordingly, the commitments to confidentiality in this Agreement are a condition to each party's willingness to engage in the contemplated discussions and any subsequent contractual relationship.

2. **CONFIDENTIAL INFORMATION**. "Confidential Information" shall be deemed to include all proprietary technical or business information relating to either party's business which is conveyed to the other party in connection with the above mentioned business activities, whether oral, written, by demonstration, or by magnetic or other media. Confidential Information may include, by way of example but without limitation, financial reports, data, know-how, formulas, algorithms, processes, designs, sketches, photographs, plans, drawings, specifications, samples, reports, customer and distributor names, pricing information, marketing information, inventions and ideas. Confidential Information shall not include information which can be clearly demonstrated by the recipient to be or have been (a) generally known or available to the public; or (b) known to the recipient prior to disclosure

1

under this Agreement; or (c) provided by a third party to the recipient without any restriction on disclosure and without breach of any obligation of confidentiality; or (d) independently developed by the recipient without breach of this Agreement and as supported by written documentation.

3.    **OBLIGATION OF CONFIDENTIALITY**. The parties shall receive and hold in confidence all Confidential Information received from the other and without limiting the generality of the foregoing shall:

    a) Not disclose or communicate Confidential Information to any third party, and shall protect the Confidential Information from unauthorized use, dissemination or publication.

    b) Use the Confidential Information only for the strictly limited purpose identified in Section 1 above. The parties acknowledge that various securities laws prohibit any person who has material non-public information about a company from purchasing or selling securities of that company or from tipping others. The parties agree to comply with all relevant securities laws.

    c) Permit access to the Confidential Information only to those of its employees who (i) require access to Confidential Information for purposes contemplated by this Agreement, and (ii) have undertaken a binding written obligation of confidentiality with respect to trade secrets of others entrusted to him or her, and (iii) have been apprised of the recipient's obligations under this Agreement. Should either party become legally compelled to disclose any of the Confidential Information, by subpoena or otherwise, that party will provide the other party with prompt notice of such disclosure requirements so that the party receiving notice may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement.

4.    **RETURN OF MATERIALS**. Upon expiration or termination of this Agreement, or the request of the disclosing party, the recipient shall promptly return to the disclosing party all tangible materials containing Confidential Information, together with all copies, and shall certify to the return of all tangible Confidential Information and references thereto, and the destruction of any references thereto on magnetic or other intangible media. The parties agree that all

2

tangible materials containing Confidential Information shall be and remain the property of the disclosing party.

5. **CONFIDENTIALITY OF BUSINESS ACTIVITIES.** Except as specifically authorized by either party to the other, neither party shall disclose to any third party that business activities are being conducted with the other party or the nature of such business activities.

6. **MISCELLANEOUS.**

   a) No right, license or ownership interest in the Confidential Information is conveyed by this Agreement, except the limited right to use the Confidential Information provided herein.

   b) No agency or partnership relationship is created between the parties by this Agreement.

   c) Neither party has any obligation under this Agreement to purchase any service or item from the other party, or to offer any service or item for sale to the other party.

   d) The parties acknowledge that no contract, agreement or obligation exists for any further transaction unless and until a subsequent definitive agreement is entered into by the parties.

   e) This Agreement shall become effective as of the date first written above and shall remain in effect for a period of one (1) year thereafter, unless earlier terminated by written notice of either party to the other. Notwithstanding termination or expiration of this Agreement, the rights and obligations of the parties hereto, specifically the obligation to protect Confidential Information received prior to any termination or expiration of this Agreement, shall survive and continue.

   f) The recipient acknowledges and expressly agrees that any threatened or actual breach by it of this Agreement which does or may result in loss of confidentiality of the Confidential Information would cause the disclosing party irreparable harm for which damages would not be an adequate remedy. The recipient agrees that, in the event of any threatened or actual breach of this Agreement, the disclosing party shall have the right to seek injunctive relief against the threatened, continuing or further breach. This right to seek injunctive relief shall be in addition to any other right which the disclosing party may have under this Agreement or otherwise at law or in equity.

3

g) All additions, modifications and waivers to this Agreement must be made in writing and signed by both parties. However, the failure of a party to insist on full compliance with any provision of this Agreement in a particular instance shall not preclude it from requiring full compliance thereafter.

h) This Agreement is made under and shall be construed according to the laws of the Commonwealth of Massachusetts should JT Packard initiate litigation, and conversely, should Electronic Environments initiate litigation, the laws of the State of Wisconsin would apply, excluding any conflict of laws provisions.

i) This Agreement states the entire agreement between the parties and supersedes all previous understandings, representations and agreements with respect to the subject matter hereof.

IN WITNESS WHEREOF, the parties hereto have caused their authorized representatives to execute this Agreement as of the date first written above.

Electronic Environments Corporation        JT Packard & Associates Inc.

And in addition personally:                And in addition personally:

Kenneth A. Rapoport, CEO                    Jeff Cason, President & CEO

Michael Kingsley, President                Peter Drumm, General Manager

Signed: _____            Signed: _____

Print: _____Kenneth Rapoport___            Print: _____Jeff Cason_____

Title: _____CEO_____            Title: _____President_____

Signed: ____Michael Kingsley___            Signed: _____

Print: ____MICHAEL KINGSLEY____            Print: _____Peter Drumm_____

Title: _____PRESIDENT_____            Title: ____General Manager_____

4

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Electronic Environments Corporation

**(b)** County of Residence of First Listed Plaintiff   Middlesex
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Leo S. McNamara; McNamara & Flynn, P.A.
84 State Street, Boston, MA   02109

## DEFENDANTS

James M. Emming

County of Residence of First Listed Defendant   New London, Connecticut
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)
Gary M. Feldman; Davis, Malm & D'Agostine, P.C.
One Boston Place, Boston, MA   02108

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☒ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1   Original
Proceeding

☒ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
another district
(specify)

☐ 6   Multidistrict
Litigation

☐ 7   Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332
Brief description of cause:
Breach of contract

## VII. REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**
injunctive relief

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
IF ANY

(See instructions):
N/A

JUDGE

DOCKET NUMBER

DATE
5-25-05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)_____

   Electronic Environments Corporation v. James M. Emming

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local
   rule 40.1(a)(1)).

   [ ]   I.    160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

   [ ]   II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

   [X]   III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

   [ ]   IV.   220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.

   [ ]   V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this
   district please indicate the title and number of the first filed case in this court.
   _____N/A_____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
                                                                        YES [ ]      NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC
   §2403)
                                                                        YES [ ]      NO [X]
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                                        YES [ ]      NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                                        YES [ ]      NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
   Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                                        YES [X]      NO [ ]

      A.    If yes, in which division do all of the non-governmental parties reside?

            Eastern Division  [X]          Central Division  [ ]          Western Division  [ ]

      B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,
            residing in Massachusetts reside?

            Eastern Division  [ ]          Central Division  [ ]          Western Division  [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes,
   submit a separate sheet identifying the motions)

                                                                        YES [ ]      NO [X]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME Gary M. Feldman, Esq.
ADDRESS  Davis, Malm & D'Agostine, P.C., One Boston Place, Boston, MA 02108
TELEPHONE NO. (617) 589-3874

(CategoryForm.wpd - 5/2/05)