UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELECTRONIC ENVIRONMENTS CORPORATION,) <br> Plaintiff ) <br> ) <br> v.                                       )         ) <br> ) <br> JAMES M. EMMING, ) <br> Defendant ) <br> ) | Civil Action No. 05-11093 NG |

**VERIFIED MOTION OF PLAINTIFF ELECTRONIC ENVIRONMENTS
CORPORATION TO FILE ITS RESPONSES TO DEFENDANT S
FIRST SET OF REQUESTS TO ADMIT OUT OF TIME**

Plaintiff Electronic Environments Corporation ( EEC ) moves under Rule 36 (b) of the Federal Rules of Civil Procedure that this Court allow it to file its responses to defendant James Emming s Requests to Admit late, and assigns as its reasons therefore the following:

1.  By letter dated September 2, 2005, and received by plaintiff s attorney on September 6, 2005, defendant James Emming ( Emming ) served EEC with a document entitled Defendant s First Set of Requests to Admit, Interrogatories and Requests for Production of Documents to Plaintiff.  A copy of that document is attached hereto as Exhibit A .

2.  Because of the way the document was captioned, and because the requests to admit were not contained in a separate document, neither counsel for EEC nor its staff noticed that the document contained  requests to admit[1] , but rather thought that the

---

[1] Counsel of EEC and is staff are used to seeing requests for admissions in a separate document entitled  Requests for Admissions .

document contained only defendant s first set of interrogatories and requests for production of documents. Therefore, they were not separately diaried for 30 day response as requests for admissions, which is the practice in counsel s office because of the potential consequence of admissions.

3.    Counsel for EEC, Leo S. McNamara, did not notice that the document contained requests for admissions until October 18, 2005, while undertaking to review the document for preparation of responses to what he thought to be defendant s first set of interrogatories and requests for production of documents.

4.    EEC absolutely does not admit the requests as set forth in EEC s proposed responses to the requests attached hereto as <u>Exhibit   B</u>.

5.    On October 21, 2005 counsel for EEC spoke with counsel for Emming, explained why the requests to admit were not noticed by counsel or his staff and requested that EEC be allowed an extension to serve responses. Counsel for Emming refused.

6.    Allowance of this motion will not in any way prejudice the defendant, but denial would be extremely prejudicial to plaintiff.

WHEREFORE, Electronic Environments Corporation requests that this Court allow this motion in order to avoid the extreme prejudice to be realized by the client, Electronic Environments Corporation, should the motion not be allowed.

Signed by me this 21st day of October 2005 under the pains and penalties of perjury.

                        ELECTRONIC ENVIRONMENTS
                        CORPORATION
                        By its Attorney,

                        /s/ Leo S. McNamara
                        Leo S. McNamara, Esq.
                        BBO # 339380
                        McNAMARA & FLYNN, P.A.
                        84 State Street, 9th Floor
                        Boston, MA 02109
                        (617) 723-3344

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ELECTRONIC ENVIRONMENTS CORPORATION,

        Plaintiff,

v.

JAMES M. EMMING,

        Defendant.

Case No. 05-11093 NG

COPY

---

**DEFENDANT'S FIRST SET OF REQUESTS TO ADMIT, INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF**

---

TO:    Electronic Environments Corporation
        c/o Attorney Leo S. McNamara
        McNamara & Flynn, P.A.
        84 State Street, 9th Floor
        Boston, MA 02109

YOU ARE HEREBY REQUIRED to answer and serve upon Axley Brynelson, LLP, Attorney Lori M. Lubinsky, attorneys for Defendant, and pursuant to Rules 33, 34 and 36 of the Federal Rules of Civil Procedure, and the Court's Local Rules, answers to the Interrogatories herein set forth separately and fully, in writing and under oath, and responses to the Requests to Admit and Requests for Production of Documents within thirty (30) days of the time service is made upon you.

**INSTRUCTIONS AND DEFINITIONS**

The instructions set forth in Local Rule 33.1 relating to Interrogatories, Local Rule 34.1 relating to document production, and Local Rule 36.1 relating to Requests to Admit are incorporated by reference as if fully set forth herein.

The uniform definitions for discovery requests set forth in Local Rule 26.5 are incorporated by reference as if fully set forth herein.

## REQUESTS TO ADMIT

Request No. 1: Admit that since Defendant began working for JT Packard, Defendant has not worked for any JT Packard customer who is also a customer of yours.

Request No. 2: Admit that since Defendant began working for JT Packard, Defendant provided no sales leads or other information about your customers to JT Packard.

Request No. 3: Admit that enforcement of the Non-Competition and Confidentiality Agreement attached as Exhibit A to your Complaint is not necessary for the protection of you when Defendant has not serviced any of your customers in his work for JT Packard and when Defendant has provided JT Packard with no sales leads or other information about your customers.

Request No. 4: Admit that Defendant has not solicited any of your customers since Defendant left your employment.

## INTERROGATORIES

Interrogatory No. 1: Identify all employees by name and position who have been employed by you from 1995 to the present who entered into a non-competition and/or confidentiality agreement similar or identical to the one entered into by Defendant.

Interrogatory No. 2: Identify all clients or customers of yours for whom Defendant acted as a service technician while he was employed by you.

Interrogatory No. 3: State the basis of your contention in Paragraph 16(b) of your Complaint that Defendant breached and continues to breach Paragraph 1 of his Non-Competition Agreement by soliciting, or aiding JT Packard in the solicitation of your customer, Cingular.

Interrogatory No. 4: State the basis of your claim in Paragraph 17 of your Complaint that Defendant has breached, and continues to breach, Paragraph 1(a) of his Non-Competition Agreement with you by providing JT Packard with confidential information about you in furtherance of JT Packard's efforts to obtain business from your customer, Cingular.

Interrogatory No. 5: Itemize all damages claimed by you as alleged in Paragraph 18 of your Complaint, identifying in your answer the type or item of damage claimed, how each claimed type or item of damage was calculated, each and every person with knowledge of the method of calculation for such claimed damages, and each and every person with knowledge of the facts used as a basis for calculating such claimed damages.

Interrogatory No. 6: Identify each and every customer or client of yours who you contend Defendant solicited or aided JT Packard in soliciting from the date Defendant terminated his employment with you to the present, stating in your answer the person at each customer or client with whom Defendant had contact, the date upon which Defendant first contacted each such customer or client, and all facts of which you are currently aware that supports your belief that Defendant solicited or aided JT Packard in soliciting your customers or clients.

Interrogatory No. 7: Describe all steps taken by you to keep the identity of your customers secret or confidential.

Interrogatory No. 8: Identify all restrictions placed upon your employees with respect to disclosure of the identity of your customers.

Interrogatory No. 9: State all facts which you claim establish that you will be irreparably harmed if Defendant is not enjoined from competing with you.

Interrogatory No. 10: Identify any claim or litigation in which you were involved arising from or related to a non-competition and/or confidentiality agreement similar or identical to that signed by the Defendant in this matter, identifying in your answer:

(a) The parties involved;

(b) The jurisdiction in court case number;

(c) Opposing counsel;

(d) The resolution of such claim or litigation; and

(e) Identify and attach copies of all such agreements.

Interrogatory No. 11: Of your employees who were subject to a non-competition and/or confidentiality agreement similar or identical to Exhibit A to your Complaint when they left your employment, identify those employees who worked for a competitor of yours during the term of such employee's non-competition and/or confidentiality agreement.

Interrogatory No. 12: Identify the Cingular "employee" that you refer to in Paragraph 13 of your Complaint.

Interrogatory No. 13: If you did not respond to any of Defendant's Requests to Admit with an unconditional admission, state the factual basis of your response.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

Request No. 1: Produce all documents which you rely upon to support your answers to the foregoing Interrogatories including, but not limited to, all damages calculations, financial documents, and account/project documents used to prepare such calculations.

Request No. 2: Produce any and all documents relating to Defendant's employment with you including, but not limited to, any contracts, personnel documents, promotion documents, and employment agreements.

Request No. 3: Produce all documents relating to Defendant's performance as an employee of yours including, but not limited to, memos, correspondence, notes, evaluations and assessments.

Request No. 4: Produce all documents relating to Defendant's termination from your employment including, but not limited to, all notes, correspondence, memos, and reports.

Request No. 5: Produce a complete copy of Defendant's personnel file maintained by you.

Request No. 6: Produce all documents describing or listing all of your customers or clients for whom Defendant acted as a service technician during his employment with you.

Request No. 7: Produce all correspondence between you and Defendant.

Request No. 8: Produce all documents identified in your Answers to Defendant's Interrogatories, or otherwise used or referenced in answering those Interrogatories.

Request No. 9: Produce all documents evidencing or relating to your alleged damages in this matter.

Dated this 7th day of September, 2005.

AXLEY BRYNELSON, LLP

_____
Lori M. Lubinsky
Attorneys for Defendant
2 East Mifflin Street
Post Office Box 1767
Madison, WI 53701-1767
(608) 283-6752

F:\EAFDATA\9058\57032\00114945.DOC

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ELECTRONIC ENVIRONMENTS CORPORATION, ) | | |
| Plaintiff ) | | |
| ) | | |
| v.           ) | ) | **Civil Action No. 05-11093 NG** |
| ) | | |
| JAMES M. EMMING, ) | | |
| Defendant ) | | |
| ) | | |

**PLAINTIFF ELECTRONIC ENVIRONMENTS
CORPORATION S RESPONSES TO DEFENDANT S
FIRST SET OF REQUESTS TO ADMIT**

REQUEST NO. 1:

Admit that since Defendant began working for JT Packard, Defendant has not worked for any JT Packard customer who is also a customer of yours.

RESPONSE NO. 1:

Electronic Environments Corporation ( EEC ) can neither admit nor deny because JT Packard keeps its customer information confidential, and JT Packard s present clients are not revealing such information.

REQUEST NO. 2:

Admit that since Defendant began working for JT Packard, Defendant provided no sales leads or other information about your customers to JT Packard.

RESPONSE NO. 2:

Denied.  Customers of EEC have approached EEC to inform ECC that James

Emming ( Emming ) has been soliciting EEC s clients for JT Packard. EEC was later informed and believes that Emming was hired by Packard at a salary of $75,000.00 per year, with a $5,000.00 signing bonus and a 3% incentive fee for all EEC service contracts Emming is able to acquire for Packard in competition with EEC.

REQUEST NO. 3:

Admit that enforcement of the Non-Competition and Confidentiality Agreement attached as Exhibit A to your Complaint is not necessary for the protection of you when Defendant has not serviced any of your customers in his work for JT Packard and when Defendant has provided JT Packard with no sales leads or other information about your customers.

RESPONSE NO. 3:

Denied. Field Technicians like Emming were, and are, required by EEC to execute EEC s non-compete/confidentiality agreement to protect EEC s confidential information and to protect EEC s unique relationships with its customers, essentially as described below.

_____Field Service Technicians have access to a wide range of confidential information, the disclosure of which can severely hurt EEC s business. As a company, EEC routinely makes documents  company confidential ; EEC explains in detail to employees like Emming their responsibilities to the company in EEC s Employee Manual; EEC requires signature of a confidentiality document at hire; and, EEC has attempted to shield unnecessary information from these employees. Nonetheless, due to their mission critical job responsibilities, as well as important role as primary  account liaison,  it is still important for Field Technicians like Emming to have access to much of EEC s confidential information. None of this information would be available through any other means other than their employment and job responsibilities at EEC. The following

information known by our Field Technicians about our EEC contracts would be a powerful tool in our competitors hands:

    a.    client names, addressed and phone numbers
    b.    equipment type, manufacturer, ages, condition, and service level required
    c.    actual contract amounts, start and end dates, term of contract - offers competitors broad efficiency to target clients and obvious advantageous to bidding work
    d.    decision makers and influencers names, their direct phone numbers and even mobile/cell numbers
    e.    on-going opportunities (or even knowledge of future opportunities which may have been shielded from EEC) held for personal gain
    f.    EEC Training materials, equipment manuals, proprietary field service forms
    g.    Field Technicians, by the nature of their mission critical response needs, have complete access to company confidential list of employees, mobile phones and even home phone numbers[1].

James Emming was employed as an Electronic Field Technician for EEC approximately May 1999 to 2005. Emming provided electronic field services to EEC clients, visiting their sites only twice per year, and sometimes providing the only EEC customer contact for many years. Field Technicians job responsibilities included account management. EEC Field Technicians are actively evaluated on customer relations during annual performance reviews, which provides additional incentive for them to cultivate customer relationships.

EEC Field Technicians respond 24x7, and often arrive at extremely tense and emotional situations for EEC clients problems. The Field Technician typically receives the most of the credit for being on-the site, and accepts the accolades by the customer. Field Technicians often work to promote their own individual relationships with

---

[1]Recently, we have seen unprecedented recruitment efforts of EEC s employees by Packard through contact via cell phones by Packard, Emming s new employer. Mobile phone numbers are not available through any source other than EEC s confidential employee list.

customers in order to reap the maximum in annual raises, and to increase their own job security. Field Technicians personal relationships with customers often supercede company s initial relationship with the customers.

EEC Field Technicians use their unique relationship with clients to secure a wide range of sales opportunities beyond service, including engineering and construction.[2] With their unique relationship, clients may view the technician as an impartial field employee, rather than an influential account manager whose job responsibilities and financial incentives encourage the securing of new business. Field Service Technicians, in short, tend to develop stronger personal bonds with EEC clients which most often supercede EEC s relationship with the client.

REQUEST NO. 4:

Admit that Defendant has not solicited any of your customers since Defendant left your employment.

RESPONSE NO. 4:

Denied. Customers of EEC have approached EEC to inform EEC that Emming has been soliciting their business since he left employment with EEC.

---

[2]EEC also provides both engineering and construction services.

ELECTRONIC ENVIRONMENTS
CORPORATION
By its Attorney,


  /s/ Leo S. McNamara
Leo S. McNamara, Esq.
BBO # 339380
McNAMARA & FLYNN, P.A.
84 State Street, 9th Floor
Boston, MA 02109
(617) 723-3344