UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ELECTRONIC ENVIRONMENTS CORPORATION,

        Plaintiff,

    v.

JAMES M. EMMING,

        Defendant.

Case No. 05-11093 NG

**AFFIDAVIT OF LORI M. LUBINSKY**

STATE OF WISCONSIN    )
                       ) ss.
COUNTY OF DANE      )

LORI M. LUBINSKY, being first duly sworn, on oath deposes and states as follows:

1.      I am adult resident of the State of Wisconsin. I am one of the attorneys representing Defendant, James M. Emming, in the above matter.

2.      I have personal knowledge of the facts set forth herein.

3.      I make this Affidavit in support of Defendant's Emergency Motion to Extend the Time for Defendants to Respond to Plaintiff's Motion for Preliminary Injunction.

4.      During a scheduling conference in this matter on July 27, 2005, the Magistrate Judge ordered the parties to have a serious and substantive discussion about potential resolution of this matter.

5.      When I discussed this matter with Attorney McNamara on July 29, 2005, he was too busy to have a serious and substantive discussion, but we exchanged the legal authorities upon which we relied for our various positions. Attorney McNamara advised me that he would contact me after his schedule freed up to complete our discussion.

6.    I did not hear back from Attorney McNamara prior to August 26, 2005. Accordingly, I sent Attorney McNamara a letter dated August 26, 2005, a copy of which is attached as Exhibit A.

7.    On September 2, 2005, I served Plaintiff with a copy of Defendant's First Set of Requests to Admit, Interrogatories and Requests for Production of Documents, a copy of which is attached as Exhibit B.

8.    On September 5, 2005, I received a copy of correspondence from Attorney McNamara dated September 2, 2005, a copy of which is attached as Exhibit C.

9.    I did not consider Attorney McNamara's letter dated September 2, 2005, to comply with the Magistrate Judge's order that the parties have a serious and substantive discussion about potential resolution of this case. Accordingly, I sent Attorney McNamara a letter dated September 9, 2005, requesting further discussion regarding potential resolution, a copy of which is attached as Exhibit D.

10.    By letter dated June 1, 2005, a copy of which is attached as Exhibit E, I asked Attorney McNamara for a copy of Defendant's personnel file and enclosed a copy of Defendant's written request for a copy of his personnel file, which request was made by Defendant to Plaintiff by e-mail dated April 4, 2005. As set forth in Exhibits A and C, Defendant's request for his personnel file went unanswered for over five months. By letter dated September 20, 2005, Attorney McNamara finally provided us with a copy of Defendant's personnel file.

11.    On October 25, 2005, I received by facsimile a copy of Plaintiff's Answers to Defendant's Interrogatories and Plaintiff's Responses to Defendant's Requests for Production of Documents, a copy of which is attached as Exhibit F.    No documents were produced with

Exhibit F.  Plaintiff's interrogatory responses indicate that some of the Interrogatory answers can be obtained from examination of records at Plaintiff's offices located at 410 Forest Street, Marlborough, Massachusetts.  Several of Plaintiff's Interrogatory responses are non-responsive.

12.     Plaintiff did not timely answer Defendant's Requests to Admit, and therefore the Requests are deemed admitted under Rule 36 of the Federal Rules of Civil Procedure On October 21, 2005, Plaintiff filed a Motion to File Responses to Requests for Admission Out of Time.  Pursuant to Local Rule 7.1(b), Defendant has 14 days to respond to that Motion, which response is due November 4, 2005.  Defendant will attempt to file its response sooner that the permitted 14 days.

13.     On October 28, 2005, Plaintiff filed a Motion for Preliminary Injunction.  Under Local Rule 7.1(b), Defendant has 14 days to respond, which response is due November 11, 2005.

14.     By failing to answer the Requests to Admit, Plaintiff has admitted that Defendant has not worked for any JT Packard customer who is a customer of Plaintiff's; that Defendant has provided no sales leads or other information about Plaintiff's customers to JT Packard; that Defendant has not solicited any of Plaintiff's customers since he left his employment with Plaintiff; and that enforcement of the Non-Competition and Confidential Agreement attached as Exhibit A to Plaintiff's Complaint is not necessary for the protection of Plaintiff.

15.     Under Massachusetts law, covenants not to compete are enforceable only to the extent that they are necessary to protect the legitimate business interests of the employer. Novelty Bias Binding Co. v. Shevrin, 342 Mass. 714, 716 (1961).

16.     Defendant believes that Plaintiff's admissions are dispositive of Plaintiff's Motion for Preliminary Injunction because Plaintiff has admitted that enforcement of the non-compete at issue is not necessary for Plaintiff's protection.  If the admissions are not withdrawn, Defendant

does not intent to engage in any other discovery in this matter. If the admissions are withdrawn, Defendant needs review documents at Plaintiff's place of business and take at least one deposition before being able to respond to Plaintiff's Motion for Preliminary Injunction.

17.    Resolution of Plaintiff's Motion to File Responses to Requests for Admissions Out of Time will significantly alter the manner in which Defendant opposes Plaintiff's Motion for Preliminary Injunction. It would be a waste of the parties' resources to require the Defendant to file his opposing materials pending a ruling from the Court on Plaintiff's Motion because Defendant will be required to engage in costly discovery and unnecessary briefing and affidavit submissions, all of which will be unnecessary if Plaintiff's admissions are not withdrawn.

18.    Defendant is still willing and able to have a serious and substantive discussion with Plaintiff about potential resolution of this case. To date, Defendant does not believe this discussion has occurred.

Dated this 31st day of October, 2005.

Lori M. Lubinsky

Subscribed and sworn to before me
this **31st** day of October, 2005.

Notary Public, State of Wisconsin
My commission expires:    1/06/08

F:\EAFDATA\9058\57032\00127756.DOC

E-MAIL: llubinsky@axley.com
DIRECT DIAL: (608) 283-6752

August 26, 2005

Mr. Leo S. McNamara
McNamara & Flynn, P.A.
84 State Street, 9th Floor
Boston, MA  02109

Re:     Electronic Environments Corporation v.
        James M. Emming
        Case No. 05-11093 NG
        Our File: 9058.57032

Dear Mr. McNamara:

During the scheduling conference on July 27, 2005, the magistrate judge required that we have a serious and substantive discussion about potential settlement.  When we discussed the matter on July 29, 2005, you were too busy to have that discussion, but we exchanged the legal authorities upon which we rely for our various positions.  You advised that you would contact me after your schedule was freed up to continue our discussion.  To date, I have not heard from you.  I have reviewed the authorities upon which you rely, which all pre-date the cases I cited to you.  I am hopeful you have had an opportunity to review the cases I have cited, especially the federal court decision in Oxford Global Resources, Inc. v. Guerriero, 2003 WL 23112398 (D. Mass. 2003).  As I have repeatedly advised, Mr. Emming is interested in resolving this case, but not if your client's demand includes that Mr. Emming be prohibited from working for JT Packard.  When we spoke on July 27, I asked you to contact your client to see whether it was interested in resolution of this matter which allowed for Mr. Emming's continued employment with JT Packard while continuing to not solicit your client's customers for the duration of the time specified in the agreement.  I still await your response.

Finally, my client asked for his personnel records months ago; I have asked you several times to provide me with a copy of Mr. Emming's personnel file.  In an effort to further potential settlement negotiations, I have delayed referral to the attorney general pursuant to Mass. Gen. Laws Ch. 149, § 52C.  Unless your client is seriously interested in discussing a reasonable resolution to this case, please ensure that your client complies with its legal obligations with respect to Mr. Emming's personnel records.

EXHIBIT
A

Mr. Leo S. McNamara
August 26, 2005
Page 2

I look forward to hearing from you.

Sincerely,

AXLEY BRYNELSON, LLP

Lori M. Lubinsky

LML:egt

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ELECTRONIC ENVIRONMENTS CORPORATION,

        Plaintiff,

  v.

JAMES M. EMMING,                             Case No. 05-11093 NG

        Defendant.

## DEFENDANT'S FIRST SET OF REQUESTS TO ADMIT, INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

TO:    Electronic Environments Corporation
       c/o Attorney Leo S. McNamara
       McNamara & Flynn, P.A.
       84 State Street, 9th Floor
       Boston, MA  02109

      YOU ARE HEREBY REQUIRED to answer and serve upon Axley Brynelson, LLP,

Attorney Lori M. Lubinsky, attorneys for Defendant, and pursuant to Rules 33, 34 and 36 of the

Federal Rules of Civil Procedure, and the Court's Local Rules, answers to the Interrogatories

herein set forth separately and fully, in writing and under oath, and responses to the Requests to

Admit and Requests for Production of Documents within thirty (30) days of the time service is

made upon you.

## INSTRUCTIONS AND DEFINITIONS

      The instructions set forth in Local Rule 33.1 relating to Interrogatories, Local Rule 34.1

relating to document production, and Local Rule 36.1 relating to Requests to Admit are

incorporated by reference as if fully set forth herein.



EXHIBIT

B

The uniform definitions for discovery requests set forth in Local Rule 26.5 are incorporated by reference as if fully set forth herein.

## REQUESTS TO ADMIT

Request No. 1:  Admit that since Defendant began working for JT Packard, Defendant has not worked for any JT Packard customer who is also a customer of yours.

Request No. 2:  Admit that since Defendant began working for JT Packard, Defendant provided no sales leads or other information about your customers to JT Packard.

Request No. 3:  Admit that enforcement of the Non-Competition and Confidentiality Agreement attached as Exhibit A to your Complaint is not necessary for the protection of you when Defendant has not serviced any of your customers in his work for JT Packard and when Defendant has provided JT Packard with no sales leads or other information about your customers.

Request No. 4:  Admit that Defendant has not solicited any of your customers since Defendant left your employment.

## INTERROGATORIES

Interrogatory No. 1:  Identify all employees by name and position who have been employed by you from 1995 to the present who entered into a non-competition and/or confidentiality agreement similar or identical to the one entered into by Defendant.

Interrogatory No. 2:  Identify all clients or customers of yours for whom Defendant acted as a service technician while he was employed by you.

Interrogatory No. 3:  State the basis of your contention in Paragraph 16(b) of your Complaint that Defendant breached and continues to breach Paragraph 1 of his Non-Competition Agreement by soliciting, or aiding JT Packard in the solicitation of your customer, Cingular.

Interrogatory No. 4: State the basis of your claim in Paragraph 17 of your Complaint that Defendant has breached, and continues to breach, Paragraph 1(a) of his Non-Competition Agreement with you by providing JT Packard with confidential information about you in furtherance of JT Packard's efforts to obtain business from your customer, Cingular.

Interrogatory No. 5: Itemize all damages claimed by you as alleged in Paragraph 18 of your Complaint, identifying in your answer the type or item of damage claimed, how each claimed type or item of damage was calculated, each and every person with knowledge of the method of calculation for such claimed damages, and each and every person with knowledge of the facts used as a basis for calculating such claimed damages.

Interrogatory No. 6: Identify each and every customer or client of yours who you contend Defendant solicited or aided JT Packard in soliciting from the date Defendant terminated his employment with you to the present, stating in your answer the person at each customer or client with whom Defendant had contact, the date upon which Defendant first contacted each such customer or client, and all facts of which you are currently aware that supports your belief that Defendant solicited or aided JT Packard in soliciting your customers or clients.

Interrogatory No. 7: Describe all steps taken by you to keep the identity of your customers secret or confidential.

Interrogatory No. 8: Identify all restrictions placed upon your employees with respect to disclosure of the identity of your customers.

Interrogatory No. 9: State all facts which you claim establish that you will be irreparably harmed if Defendant is not enjoined from competing with you.

**Interrogatory No. 10:** Identify any claim or litigation in which you were involved arising from or related to a non-competition and/or confidentiality agreement similar or identical to that signed by the Defendant in this matter, identifying in your answer:

    (a)      The parties involved;

    (b)      The jurisdiction in court case number;

    (c)      Opposing counsel;

    (d)      The resolution of such claim or litigation; and

    (e)      Identify and attach copies of all such agreements.

**Interrogatory No. 11:** Of your employees who were subject to a non-competition and/or confidentiality agreement similar or identical to Exhibit A to your Complaint when they left your employment, identify those employees who worked for a competitor of yours during the term of such employee's non-competition and/or confidentiality agreement.

**Interrogatory No. 12:** Identify the Cingular "employee" that you refer to in Paragraph 13 of your Complaint.

**Interrogatory No. 13:** If you did not respond to any of Defendant's Requests to Admit with an unconditional admission, state the factual basis of your response.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**Request No. 1:** Produce all documents which you rely upon to support your answers to the foregoing Interrogatories including, but not limited to, all damages calculations, financial documents, and account/project documents used to prepare such calculations.

**Request No. 2:** Produce any and all documents relating to Defendant's employment with you including, but not limited to, any contracts, personnel documents, promotion documents, and employment agreements.

**Request No. 3**:  Produce all documents relating to Defendant's performance as an employee of yours including, but not limited to, memos, correspondence, notes, evaluations and assessments.

**Request No. 4**:  Produce all documents relating to Defendant's termination from your employment including, but not limited to, all notes, correspondence, memos, and reports.

**Request No. 5**:  Produce a complete copy of Defendant's personnel file maintained by you.

**Request No. 6**:  Produce all documents describing or listing all of your customers or clients for whom Defendant acted as a service technician during his employment with you.

**Request No. 7**:  Produce all correspondence between you and Defendant.

**Request No. 8**:  Produce all documents identified in your Answers to Defendant's Interrogatories, or otherwise used or referenced in answering those Interrogatories.

**Request No. 9**:  Produce all documents evidencing or relating to your alleged damages in this matter.

Dated this 7ᵗʰ day of September, 2005.

AXLEY BRYNELSON, LLP

Lori M. Lubinsky
Attorneys for Defendant
2 East Mifflin Street
Post Office Box 1767
Madison, WI  53701-1767
(608) 283-6752

F:\EAFDATA\9058\57032\00114945.DOC

McNAMARA & FLYNN, P.A.

COUNSELLORS AT LAW

84 STATE STREET

BOSTON, MASSACHUSETTS 02109

TELEPHONE (617) 723-3344

FAX (617) 723-4477

September 2, 2005

Lori M. Lubinsky, Esq.
Axley Brynelson, LLP
2 East Mifflin Street, Suite 200
Madison, Wisconsin 53703

Re:    **Electronic Environments Corporation v. James M. Emming**
       **United States District Court Civil Action No. 05-11093NG**

Dear Attorney Lubinsky:

Enclosed is Electronic Environment Corporation's Initial Disclosure statement which has been electronically filed with the Court. Also, I have thoroughly reviewed the cases that you have provided, and find them to be inapplicable to the facts in this case. Under current Massachusetts law, Mr. Emming has breached a valid and enforceable agreement.

If you wish to discuss the matter further, please give me a call.

Very truly yours,
McNAMARA & FLYNN, P.A.

Leo S. McNamara

LSM:mm
Enclosures
cc:    Electronic Environments Corporation


EXHIBIT
C

E-MAIL: llubinsky@axley.com
DIRECT DIAL: (608) 283-6752

September 9, 2005


Mr. Leo S. McNamara
McNamara & Flynn, P.A.
84 State Street, 9th Floor
Boston, MA 02109

Re:   Electronic Environments Corporation v.
      James M. Emming
      Case No. 05-11093 NG
      Our File: 9058.57032

Dear Mr. McNamara:

Your letter dated September 2, 2005, is not a response to my suggestions regarding resolution of this case as outlined in my letter dated August 26, 2005. To date, your client has not engaged in any discussion that could be considered by any reasonable person to be "serious and substantive" as ordered by the Magistrate Judge. Further, I note that your initial disclosures include Mr. Emming's personnel records that he and I have both sought for months now. What is it going to take to get EEC to comply with the law and provide Mr. Emming with his personnel records?

I await your response.

Sincerely,

AXLEY BRYNELSON, LLP



Lori M. Lubinsky

LML:kjb



EXHIBIT
D

E-MAIL: llubinsky@axley.com
DIRECT DIAL: (608) 283-6752

June 1, 2005


Mr. Leo S. McNamara
McNamara & Flynn, P.A.
84 State Street, 9th Floor
Boston, MA  02109

RE:    Electronic Environments Corporation v.
       James M. Emming
       Case No. 05 11093 NG
       Our File:  9058.57032

Dear Mr. McNamara:

Enclosed is a copy of Mr. Emming's written request to your client, EEC, dated April 4, 2005, for a copy of his personnel file.  Pursuant to Mass. Gen. Laws ch. 149, § 52C, Mr. Emming was entitled to a copy of his personnel file within five business days of his written request.  To date, EEC has not responded to Mr. Emming's request.   Accordingly, I am writing to request that you ensure EEC complies with Mr. Emming's request at this time.

In addition, I would like the opportunity to discuss whether we can reach a compromise to this lawsuit before engaging in potentially needless litigation.  We have exchanged several voice mail messages, and I await your call.

I look forward to hearing from you.

Sincerely,

AXLEY BRYNELSON, LLP


Lori M. Lubinsky

LML:kjb
Enclosure



Subj:    **FW: Copies of personnel files**
Date:    4/4/2005 8:42:20 A.M. Eastern Standard Time
From:    jemming@eecnet.com
To:      jmemming@aol.com


-----Original Message-----
**From:** Emming, Jim
**Sent:** Monday, April 04, 2005 8:37 AM
**To:** Weinrib, Cathleen
**Subject:** Copies of personnel files

Cathleen,

      **This is my written request for a copy of my personnel file. Please mail it to the address I gave you** Friday.

                                      Respectfully,
                                       Jim Emming

## McNAMARA & FLYNN, P.A.
### COUNSELLORS AT LAW
#### 84 STATE STREET
#### BOSTON, MASSACHUSETTS 02109

TELEPHONE (617) 723-3344
FAX (617) 723-4477

October 25, 2005

**BY FACSIMILE (608) 257-5444 AND MAIL**

Lori M. Lubinsky, Esq.
Axley Brynelson, LLP
2 East Mifflin Street, Suite 200
Madison, Wisconsin 53703

Re:   **Electronic Environments Corporation v. James M. Emming**
      **United States District Court Civil Action No. 05-11093NG**

Dear Attorney Lubinsky:

Enclosed are the following documents:

1)   Plaintiff Electronic Environments Corporation's Answers to Defendant's Interrogatories, and

2)   Plaintiff Electronic Environments Corporation's Responses to Defendant's Requests for Production of Documents.

If you have any questions, please give me a call.

Very truly yours,
McNAMARA & FLYNN, P.A.

Leo S. McNamara

LSM:mm
Enclosures
cc:   Electronic Environments Corporation



EXHIBIT
**F**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ELECTRONIC ENVIRONMENTS CORPORATION,)
        Plaintiff               )
                                   )
v.                                  )   **Civil Action No. 05-11093 NG**
                                   )
JAMES M. EMMING,               )
        Defendant            )
                                   )

**PLAINTIFF ELECTRONIC ENVIRONMENTS
CORPORATION'S ANSWERS
<u>TO DEFENDANT'S INTERROGATORIES</u>**

<u>INTERROGATORY NO. 1</u>:

      Identify all employees by name and position who have been employed by you from 1995 to the present who entered into a non-competition and/or confidentiality agreement similar to the one entered into by Defendant.

<u>ANSWER NO.1</u>:

      Plaintiff objects to this interrogatory in that it is overly broad, unduly burdensome and is not likely to lead to evidence relevant to this case.  Without waiving the foregoing objection, plaintiff says that the answer to this interrogatory can be obtained by examination of plaintiff's personnel files for the period in question which will be made available to defendant at plaintiff's offices, 410 Forest Street, Marlborough, MA 01752 during normal business hours upon reasonable notice to plaintiff's attorney.

<u>INTERROGATORY NO. 2</u>:

      Identify all clients or customers of yours for whom Defendant acted as a technician

while he was employed by you.

ANSWER NO. 2:

Plaintiff objects to this interrogatory in that it is overly broad, unduly burdensome and is not likely to lead to evidence relevant to this case.  Without waiving the foregoing objection, plaintiff says that the answer to this interrogatory can be obtained by examination of plaintiff's field service files for the period in question which will be made available to defendant at plaintiff's offices, 410 Forest Street, Marlborough, MA 01752 during normal business hours upon reasonable notice to plaintiff's attorney.

INTERROGATORY NO. 3:

State the basis of your contention in Paragraph 16(b) of your Complaint that Defendant breached and continues to breach Paragraph 1 of his Non-Competition Agreement by soliciting, or aiding JT Packard in the solicitation of your customer, Cingular.

ANSWER NO. 3:

After making application for employment with EEC on June 7, 1999, EEC hired Emming as a field service/battery technician.  Prior to hiring Emming, EEC notified Emming that, among other things, he would be an employee at will and that he would have to sign a non-competition and confidentiality agreement as a condition of his employment.  On the date of his hire, June 7, 1999, Emming did execute a non-competition and confidentiality agreement stating *inter alia*:

> Further, during the period of my employment by the company and for one year thereafter regardless of the circumstances surrounding my termination, I shall not, directly or indirectly, alone or as a consultant, partner, officer, director, employee or stockholder of any entity, (a) engage in any business activity

2

which is in competition with products or services being
developed, manufactured, marketed, or sold by the company;
(b) solicit, do business or attempt to do business with any other
customer or perceptive customer of the company with whom I
have solicited or had contact with while employed by the
company.

On March 28, 2005, Emming informed EEC that he was leaving EEC's employment.  On
or about March 30, 2005, Emming became an employee of JT Packard & Associates, Inc,
a direct competitor of EEC, performing field technician services for JT Packard in direct
competition with EEC.  EEC also is informed, and believes, that Emming has solicited
business from EEC customers while an employee of JT Packard.  As late as March 23,
2005, Emming performed service for EEC as an employee of EEC at Cingular's
telecommunications site in Bolton, Massachusetts.  On March 30, 2005, after Emming
had gone to work for JT Packard, EEC was informed by an employee of its client,
Cingular, that Emming was working for JT Packard, and JT Packard was actively seeking
to become an authorized  Cingular technical service and maintenance vendor, in direct
competition with EEC.


INTERROGATORY NO. 4:

State the basis of your claim in Paragraph 17 of your Complaint that Defendant has
breached and continues to breach, Paragraph 1(a) of his Non-Competition Agreement
with you by providing JT Packard with confidential information about you in furtherance
of JT Packard's efforts to obtain business from your customer, Cingular.


ANSWER NO. 4:

EEC is not able, at this time, to itemize its damages in monetary terms.  However,
as set forth in case law applicable to covenants not to compete in Massachusetts,
employees such as Emming, who leave their employment after having developed special

3

relationships with EEC's customers, *per se* cause damage to EEC when they go to work in direct competition with EEC. Likewise, employees such as Emming, take with them confidential information and specialized knowledge such as contact information, employee information, information regarding the operation of EEC, information regarding ongoing opportunities for business, information regarding EEC training materials, equipment materials and proprietary field service forms and information regarding other EEC employees such as mobile telephone numbers, and the identity of those employees.

INTERROGATORY NO. 5:

Itemize all damages claimed by you as alleged in Paragraph 18 of your Complaint, identifying in your answer the type or item of damage claimed, how each claimed type or item of damage was calculated, each and every person with knowledge of the method of calculation for such claimed damages, and each and every person with knowledge of the facts used as a basis for calculating such claimed damages.

ANSWER NO. 5:

EEC is not able, at this time, to itemize its damages in monetary terms. However, as set forth in case law applicable to covenants not to compete in Massachusetts, employees such as Emming, who leave their employment after having developed special relationships with EEC's customers, *per se* cause damage to EEC when they go to work in direct competition with EEC. Likewise, employees such as Emming, take with them confidential information and specialized knowledge such as contact information, employee information, information regarding the operation of EEC, information regarding ongoing opportunities for business, information regarding EEC training materials, equipment materials and proprietary field service forms and information regarding other EEC employees such as mobile telephone numbers, and the identity of

4

those employees.


## INTERROGATORY NO. 6:

Identify each and every customer or client of yours who you contend Defendant solicited or aided JT Packard in soliciting from the date Defendant terminated his employment with you to the present, stating in your answer the person at each customer or client with whom Defendant had contact, the date upon which Defendant first contacted each such customer or client, and all facts of which you are currently aware that supports your belief that Defendant solicited or aided JT Packard in soliciting your customers or clients.


## ANSWER NO. 6:

After making application for employment with EEC on June 7, 1999, EEC hired Emming as a field service/battery technician.  Prior to hiring Emming, EEC notified Emming that, among other things, he would be an employee at will and that he would have to sign a non-competition and confidentiality agreement as a condition of his employment.  On the date of his hire, June 7, 1999, Emming did execute a non-competition and confidentiality agreement stating *inter alia*:

> Further, during the period of my employment by the company
> and for one year thereafter regardless of the circumstances
> surrounding my termination, I shall not, directly or indirectly,
> alone or as a consultant, partner, officer, director, employee or
> stockholder of any entity, (a) engage in any business activity
> which is in competition with products or services being
> developed, manufactured, marketed, or sold by the company;
> (b) solicit, do business or attempt to do business with any other
> customer or perceptive customer of the company with whom I
> have solicited or had contact with while employed by the
> company.

5

On March 28, 2005, Emming informed EEC that he was leaving EEC's employment. On or about March 30, 2005, Emming became an employee of JT Packard & Associates, Inc, a direct competitor of EEC, performing field technician services for JT Packard in direct competition with EEC. EEC also is informed, and believes, that Emming has solicited business from EEC customers while he an employee of JT Packard. As late as March 23, 2005, Emming performed service for EEC as an employee of EEC at Cingular's telecommunications site in Bolton, Massachusetts. On March 30, 2005, after Emming had gone to work for JT Packard, EEC was informed by an employee of its client, Cingular, that Emming was working for JT Packard and JT Packard was actively seeking to become an authorized Cingular technical service and maintenance vendor, in direct competition with EEC.

INTERROGATORY NO. 7:

   Describe all steps taken by you to keep the identity of your customers or confidential.

ANSWER NO. 7:

   Prior to being hired by EEC, Emming was informed in writing that he would have to, *inter alia*, sign a non-competition agreement. At the time he was hired, Emming was required to sign a non-competition agreement. EEC's employee manual also contains strict prohibitions against EEC employees disclosing confidential information or working in competition against EEC.

INTERROGATORY NO. 8:

   Identify all restrictions placed upon your employees with respect to disclosure of the identity of your customers.

6

ANSWER NO. 8:

The identity of EEC's customers is confidential information the disclosure of which is prohibited under the non-competition and confidentiality agreement and by EEC's Employee Handbook. On July16, 1999, Emming signed an Acknowledgment that he had received "a complete listing of EEC clients, including equipment listing, contacts, phone numbers, directions and account numbers" which he acknowledged to be confidential property of EEC. By signing the Acknowledgment, Emming further agreed not to disclose such information to any person not employed by EEC, and to return the information to his supervisor upon termination of his employment.

INTERROGATORY NO. 9:

State all facts which you claim establish that you will be irreparably harmed if Defendant is not enjoined from competing with you.

ANSWER NO. 9:

EEC is not able, at this time, to itemize its damages in monetary terms. However, as set forth in case law applicable to covenants not to compete in Massachusetts, employees such as Emming, who leave their employment after having developed special relationships with EEC's customers, *per se* cause damage to EEC when they go to work in direct competition with EEC. Likewise, employees such as Emming, take with them confidential information and specialized knowledge such as contact information, employee information, information regarding the operation of EEC, information regarding ongoing opportunities for business, information regarding EEC training materials, equipment materials and proprietary field service forms and information regarding other EEC employees such as mobile telephone numbers, and the identity of those employees.

7

INTERROGATORY NO. 10:

Identify any claim or litigation in which you were involved arising from or related to a non-competition and/or confidentiality agreement similar or identical to that signed by Defendant in this matter, identifying in your answer:

(a)    The parties involved;

(b)    The jurisdiction in court case number;

(c)    Opposing counsel;

(d)    The resolution of such claim or litigation; and

(e)    Identify and attach copies of all such agreements.


ANSWER NO. 10:

None.


INTERROGATORY NO. 11:

Of your employees who were subject to a non-competition and/or confidentiality agreement similar or identical to Exhibit A to your Complaint when they left your employment, identify those employees who worked for a competitor of yours during the term of such employee's non-competition and/or confidentiality agreement.


ANSWER NO. 11:

None known.


INTERROGATORY NO. 12:

Identify the Cingular "employee" that you refer to in Paragraph 13 of your Complaint.


ANSWER NO. 12:

Mr. Andes.

8

<u>INTERROGATORY NO. 13</u>:

If you did not respond to any of Defendant's Requests to Admit with an unconditional admission, state the factual basis of your response.

<u>ANSWER NO. 13</u>:

See EEC's responses to defendant's requests to admit attached hereto as <u>Exhibit</u> "<u>A</u>."

Signed by me this 25th day of October, 2005 under the pains and penalties of perjury.

Kenneth A. Rapoport, CEO
Electronic Environments Corporation

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ELECTRONIC ENVIRONMENTS CORPORATION,)
       Plaintiff              )
                              )
v.                           )   **Civil Action No. 05-11093 NG**
                              )
JAMES M. EMMING,          )
       Defendant          )
                              )

## PLAINTIFF ELECTRONIC ENVIRONMENTS CORPORATION'S RESPONSES TO DEFENDANT'S <u>FIRST SET OF REQUESTS TO ADMIT</u>

<u>REQUEST NO. 1</u>:

    Admit that since Defendant began working for JT Packard, Defendant has not worked for any JT Packard customer who is also a customer of yours.

<u>RESPONSE NO. 1</u>:

    Electronic Environments Corporation ("EEC") can neither admit nor deny because JT Packard keeps its customer information confidential, and JT Packard's present clients are not revealing such information.

<u>REQUEST NO. 2</u>:

    Admit that since Defendant began working for JT Packard, Defendant provided no sales leads or other information about your customers to JT Packard.

<u>RESPONSE NO. 2</u>:

    Denied.  Customers of EEC have approached EEC to inform ECC that James

Emming ("Emming") has been soliciting EEC's clients for JT Packard. EEC was later informed and believes that Emming was hired by Packard at a salary of $75,000.00 per year, with a $5,000.00 signing bonus and a 3% incentive fee for all EEC service contracts Emming is able to acquire for Packard in competition with EEC.

REQUEST NO. 3:

Admit that enforcement of the Non-Competition and Confidentiality Agreement attached as Exhibit A to your Complaint is not necessary for the protection of you when Defendant has not serviced any of your customers in his work for JT Packard and when Defendant has provided JT Packard with no sales leads or other information about your customers.

RESPONSE NO. 3:

Denied. Field Technicians like Emming were, and are, required by EEC to execute EEC's non-compete/confidentiality agreement to protect EEC's confidential information and to protect EEC's unique relationships with its customers, essentially as described below.

Field Service Technicians have access to a wide range of confidential information, the disclosure of which can severely hurt EEC's business. As a company, EEC routinely makes documents "company confidential"; EEC explains in detail to employees like Emming their responsibilities to the company in EEC's Employee Manual; EEC requires signature of a confidentiality document at hire; and, EEC has attempted to shield unnecessary information from these employees. Nonetheless, due to their mission critical job responsibilities, as well as important role as primary "account liaison," it is still important for Field Technicians like Emming to have access to much of EEC's confidential information. None of this information would be available through any other means other than their employment and job responsibilities at EEC. The following

information known by our Field Technicians about our EEC contracts would be a powerful tool in our competitors' hands:

a.  client names, addressed and phone numbers
b.  equipment type, manufacturer, ages, condition, and service level required
c.  actual contract amounts, start and end dates, term of contract - offers competitors broad efficiency to target clients and obvious advantageous to bidding work
d.  decision makers' and influencers' names, their direct phone numbers and even mobile/cell numbers
e.  on-going opportunities (or even knowledge of future opportunities which may have been shielded from EEC) held for personal gain
f.  EEC Training materials, equipment manuals, proprietary field service forms
g.  Field Technicians, by the nature of their mission critical response needs, have complete access to company confidential list of employees, mobile phones and even home phone numbers[1].

James Emming was employed as an Electronic Field Technician for EEC approximately May 1999 to 2005. Emming provided electronic field services to EEC clients, visiting their sites only twice per year, and sometimes providing the only EEC customer contact for many years. Field Technicians' job responsibilities included account management. EEC Field Technicians are actively evaluated on customer relations during annual performance reviews, which provides additional incentive for them to cultivate customer relationships.

EEC Field Technicians respond "24x7," and often arrive at extremely tense and emotional situations for EEC clients' problems. The Field Technician typically receives the most of the credit for being "on-the site," and accepts the accolades by the customer. Field Technicians often work to promote their own individual relationships with

---

[1]Recently, we have seen unprecedented recruitment efforts of EEC's employees by Packard through contact via cell phones by Packard, Emming's new employer. Mobile phone numbers are not available through any source other than EEC's confidential employee list.

-3-

customers in order to reap the maximum in annual raises, and to increase their own job security. Field Technicians' personal relationships with customers often supercede company's initial relationship with the customers.

EEC Field Technicians use their unique relationship with clients to secure a wide range of sales opportunities beyond service, including engineering and construction.[2] With their unique relationship, clients may view the technician as an "impartial field employee," rather than an influential account manager whose job responsibilities and financial incentives encourage the securing of new business. Field Service Technicians, in short, tend to develop stronger personal bonds with EEC clients which most often supercede EEC's relationship with the client.

REQUEST NO. 4:

Admit that Defendant has not solicited any of your customers since Defendant left your employment.

RESPONSE NO. 4:

Denied. Customers of EEC have approached EEC to inform EEC that Emming has been soliciting their business since he left employment with EEC.

---

[2]EEC also provides both engineering and construction services.

-4-

ELECTRONIC ENVIRONMENTS
CORPORATION
By its Attorney,


Leo S. McNamara, Esq.
BBO # 339380
McNAMARA & FLYNN, P.A.
84 State Street, 9th Floor
Boston, MA 02109
(617) 723-3344

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELECTRONIC ENVIRONMENTS CORPORATION,) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> JAMES M. EMMING, ) <br> Defendant ) <br> ) | **Civil Action No. 05-11093 NG** |

**PLAINTIFF ELECTRONIC ENVIRONMENTS
CORPORATION'S RESPONSES TO DEFENDANT'S
REQUESTS FOR PRODUCTION OF DOCUMENTS**

REQUEST NO. 1:

Produce all documents which you rely upon to support your answers to the foregoing Interrogatories including, but not limited to, all damages calculations, financial documents, and account/project documents used to prepare such calculations.

RESPONSE NO. 1:

Plaintiff objects to this request in that it is overly broad, vague and infringes upon the work product and attorney/client privileges. Without waiving the foregoing objection, plaintiff refers to those documents referenced in its answers to interrogatories which may be examined at plaintiff's offices, 410 Forest Street, Marlborough, MA 01752 during normal business hours upon reasonable notice to plaintiff's attorney.

REQUEST NO. 2:

Produce any and all documents relating to Defendant's employment with you including, but not limited to, any contracts, personnel documents, promotion documents,

and employment agreements.

RESPONSE NO. 2:

Plaintiff objects to this request in that it is overly broad, vague and unduly burdensome. Without waiving objection, plaintiff states that plaintiff has already produced defendant's personnel file at the request of defendant's attorney.

REQUEST NO. 3:

Produce all documents relating to Defendant's performance as an employee of yours including, but not limited to, memos, correspondence, notes, evaluations and assessments.

RESPONSE NO. 3:

Plaintiff objects to this request in that it is overly broad, vague and unduly burdensome. Without waiving objection, plaintiff states that plaintiff has already produced defendant's personnel file at the request of defendant's attorney.

REQUEST NO. 4:

Produce all documents relating to Defendant's termination from your employment including, but not limited to, all notes, correspondence, memos, and reports.

RESPONSE NO. 4:

Plaintiff has no such documents since defendant refused to come in for his exit/termination of employment conference.

REQUEST NO. 5:

Produce a complete copy of Defendant's personnel file maintained by you.

2

RESPONSE NO. 5:

Plaintiff has already produced defendant's personnel file at the request of defendant's attorney.

REQUEST NO. 6:

Produce all documents describing or listing all of your customers or clients for whom Defendant acted as a service technician during is employment with you.

RESPONSE NO. 6:

Plaintiff objects to this request in that it is overly broad, unduly burdensome and is not likely to lead to information relevant to this action. Without waiving the foregoing objection, plaintiff says that defendant may examine the documents requested at plaintiff's offices, 410 Forest Street, Marlborough, MA 01752 during normal business hours upon reasonable notice to plaintiff's attorney.

REQUEST NO. 7:

Produce all correspondence between you and Defendant.

RESPONSE NO. 7:

The correspondence requested is contained in defendant's personnel file previously delivered to defendant's attorney as related in plaintiff's response to request no. 2.

REQUEST NO. 8:

Produce all documents identified in your Answers to Defendant's Interrogatories, or otherwise used or referenced in answering those Interrogatories.

RESPONSE NO. 8:

Plaintiff, without waiving the objections stated in plaintiff's answers to interrogatories, plaintiff will produce such documents for inspection at plaintiff's offices, 410 Forest Street, Marlborough, MA 01752 during normal business hours upon reasonable notice to plaintiff's attorney.

REQUEST NO. 9:

Produce all documents evidencing or relating to your alleged damages in this matter.

RESPONSE NO. 9:

EEC is not able, at this time, to itemize its damages in monetary terms. However, as set forth in case law applicable to covenants not to compete in Massachusetts, employees such as Emming, who leave their employment after having developed special relationships with EEC's customers, per say cause damage to EEC when they go to work in direct competition with EEC. Likewise, employees such as Emming, take with them confidential information specialized knowledge such as contact information, employee information, information regarding the operation of EEC, information regarding ongoing opportunities for business, information regarding EEC training materials, equipment materials and proprietary field service forms and information regarding other EEC employees such as mobile telephone numbers, and the identity of those employees.

4

ELECTRONIC ENVIRONMENTS
CORPORATION
By its Attorney,


Leo S. McNamara, Esq.
BBO # 339380
McNAMARA & FLYNN, P.A.
84 State Street, 9th Floor
Boston, MA 02109
(617) 723-3344

Dated: October 25, 2005

5